ROSHKA DEWULF & PATTEN, PLC
ONE ARIZONA CENTER
400 EAST VAN BUREN STREET
SUITE 800
PHOENIX, ARIZONA 85004
TELEPHONE NO 602-256-6100
FACSIMILE 602-256-6800
dewulf@rdp-law.com
wauro@rdp-law.com
jstevens@rdp-law.com

Name and State Bar No.:    John E. DeWulf/#006850
                           Darlene M. Wauro/#014697
                           Jennifer A. Stevens/#024655

Attorneys for Defendant Seattle Genetics, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Arizona Board of Regents for and on behalf of Arizona State University; and Arizona Science and Technology Enterprises, LLC, an Arizona limited liability company, doing business as Arizona Technology Enterprises, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>Seattle Genetics, Inc., a Delaware corporation, John and Jane Does 1-10; and White Corporations 1-10,<br><br>Defendants. | No. 2:12-cv-02498-PHX-FJM<br><br>**DEFENDANT SEATTLE GENETICS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND TO ARIZONA SUPERIOR COURT FOR MARICOPA COUNTY** |

## I.    INTRODUCTION

Defendant Seattle Genetics, Inc. ("SeaGen") has developed a life-saving, FDA-approved drug for the treatment of certain types of cancer. This drug, called ADCETRIS®, was developed entirely in SeaGen's laboratories in Bothell, Washington. Eight years ago, in 2004, Arizona State University agreed in writing that ADCETRIS is not covered by an ASU patent. However, now that ADCETRIS is a commercial success, and after a change in leadership at ASU's Office of Technology Collaboration and Licensing, plaintiffs suddenly have reversed field and claim an interest in ADCETRIS. Whether or not this new-found assertion has any factual or legal basis is currently the subject of comprehensive litigation pending in the United States District Court for the Western District of Washington. *Seattle Genetics, Inc. v. Arizona Technology Enterprises, et al.*, No. 2:12-cv-01734-RAJ (hereafter, "the Washington Lawsuit.").

After the Washington Lawsuit was filed and served, Arizona Technology Enterprises ("AzTE") and the Board of Regents sued SeaGen in Arizona Superior Court, Maricopa County. SeaGen promptly removed that case to this Court and asked that it be transferred to Seattle and consolidated with the Washington Lawsuit. Resisting this logical request, plaintiffs instead ask this Court to remand this matter back to state court. Plaintiffs argue that the Board of Regents is not a "citizen" of Arizona, so there is not complete diversity permitting jurisdiction in this Court. In fact, however, the Board of Regents is not a necessary party to this litigation. The Board should be severed as a party and dismissed. AzTE's claims should then be transferred to the Western District of Washington.

## II.    STATEMENT OF FACTS

SeaGen is a publicly-traded biotechnology company focused on developing antibody-based therapeutics for the treatment of cancer. After investing thousands of hours of research and hundreds of millions of dollars, SeaGen developed a proprietary antibody-drug conjugate ("ADC") technology for the treatment of relapsed Hodgkins lymphoma and systemic anaplastic large cell lymphoma. In August, 2011, SeaGen received FDA

1

1 approval for that product. Declaration of Kirk Schumacher in Support of Seattle Genetics'
2 Motion to Transfer Venue (Docket No. 19) ("Schumacher Decl."), ¶¶ 2, 3.

3     Plaintiff, Arizona Technology Enterprises LLC ("AzTE"), claims to be "the
4 exclusive licensee of intellectual property (including know-how) developed at Arizona
5 State University…." *See* Declaration of Kevin Trock in Support of Seattle Genetics'
6 Motion to Transfer (Docket No. 18) ("Trock Decl."), Exhibit A to Exhibit 1, ¶ 2 (hereafter,
7 "Complaint"). AzTE is the successor-in-interest to ASU's Office of Technology
8 Collaboration and Licensing, which was the entity that signed the contract at issue in this
9 case. *See* Declaration of James G. Gilliland in Support of Seattle Genetics, Inc.'s
10 Opposition to Plaintiffs' Motion to Remand to Arizona Superior Court for Maricopa
11 County ("Gilliland Decl."), Exs. C-E. AzTE was formed in November, 2003, and operates
12 in accordance with a written Management Services Agreement and a Master Intellectual
13 Property and License Agreement that AzTE executed with the Board of Regents. *See id.*,
14 Exs. B-C. AzTE's tasks include "performing technology transfer initiatives," "managing
15 license agreements with third parties," and recommending whether to initiate patent
16 litigation. *Id.*, Ex. C, §§ 1(a)(i), (ii); (b)(ii).

17     AzTE characterizes itself as "the exclusive intellectual property management and
18 technology transfer organization for Arizona State University." *Id.*, Ex. D. Under the
19 Management Services Agreement, AzTE has the right and title to any property, or property
20 rights, that it receives from licensing. *Id.* Ex. C, § 1(a)(v) ("Any Securities Rights or other
21 property or rights or interests in property received by AZTE in licensing ASU Technology
22 will be held and managed by AZTE in AZTE's name.") In prior patent litigation, AzTE
23 has enforced patent rights without joining the Board of Regents. *See Helicos Biosciences*
24 *Corporation and Arizona Science and Technology Enterprises LLC (d/b/a Arizona*
25 *Technology Enterprises) v. Life Tech. Corp. and Illumina, Inc.*, CA No. 10-735-SLR-MPT
26 (D. Del.). *Id.*, Ex. G.

27     Plaintiff Board of Regents is not a party to the Materials Transfer Agreement

**ROSHKA DEWULF & PATTEN, PLC**
ONE ARIZONA CENTER
400 EAST VAN BUREN - SUITE 800
PHOENIX, ARIZONA 85004
TELEPHONE NO 602-256-6100
FACSIMILE 602-256-6800

entered in 2003 with SeaGen (the "2003 MTA"), the contract that AzTE claims SeaGen has breached, and is therefore not a necessary party to this litigation. Under the Management Services Agreement, the Board of Regents has no right or title to property or property rights arising from AzTE's licensing activity. *See* Gilliland Decl., Ex. C, § 1(a)(v) ("Neither ASU nor the faculty inventor(s) will have or hold any right, title or interest in the Securities Rights or other property or rights to or interests in property received by AZTE, and they will not participate in any action or decision relating to the Securities Rights or other property or rights to or interests in property held by AZTE.")

On August 30, 2012, one year after the FDA approved ADCETRIS, SeaGen received a letter from counsel for AzTE, claiming that a patent license agreement entered twelve years earlier (the "'483 Patent License") granted SeaGen only "certain narrow rights" in a patent owned by ASU (the "'483 patent"). Schumacher Decl., ¶ 4. The August 30 letter stated that AzTE was now prepared to grant SeaGen much broader rights, thereby implying that SeaGen needed such a license. *Id.* This issue, however, had been decided nearly eight years earlier in a written amendment to the '483 Patent License (the "2004 Amendment"). In that amendment, AzTE specifically agreed that the '483 patent (and, therefore, the '483 Patent License) did not cover certain compounds created by SeaGen, including monomethyl auristatin E ("MMAE"). ADCETRIS, SeaGen's commercial product, uses MMAE as its active cytotoxin. Thus the 2004 Amendment signed by AzTE establishes that SeaGen does not owe AzTE any royalties or other payments for the manufacture or sale of ADCETRIS. AzTE, however, is apparently unhappy with the terms it agreed to in 2004 and now is attempting to coerce additional payments from SeaGen.

On October 5, 2012, in response to AzTE's threats, SeaGen filed the Washington Lawsuit seeking a declaration that SeaGen's development and commercialization of ADCETRIS did not infringe the '483 patent and did not breach the '483 Patent License, as amended in 2004. In retaliation for SeaGen's filing of the Washington Lawsuit, AzTE and the Board filed the present follow-on action in Arizona Superior Court on October 31,

3

2012 (the "Arizona Action"). Plaintiffs' primary claim in the Arizona Action is breach of the 2003 Materials Transfer Agreement. Complaint, ¶¶ 23-27. Their second claim asserts that if "facts [are] discovered… establishing… that a valid contract does not exist" then plaintiffs contend that SeaGen has been unjustly enriched by its alleged improper use of materials and information received from ASU during the development and sale of ADCETRIS. *Id.* at ¶¶ 28-34.

The claims raised in the Arizona Action are also pending in the Washington Lawsuit. On November 5, 2012, SeaGen filed an Amended Complaint in the Washington Lawsuit adding claims seeking a declaration that SeaGen did <u>not</u> breach the 2003 MTA and was <u>not</u> unjustly enriched. All four claims asserted in the Washington Lawsuit arise out of the same set of operative facts and form part of the same case or controversy, because they all involve SeaGen's agreements with AzTE and SeaGen's development and commercialization of ADCETRIS. Because the two cases involve the same issues and arise out of the same set of operative facts, the interests of justice, in addition to the convenience of the parties and witnesses, are best served by transferring AzTE's claims to the Western District of Washington, so that they may be consolidated with the earlier filed case. To that end, on November 20, 2012, SeaGen removed the Arizona Action to this Court, Trock Decl., ¶¶ 2-3 & Exs. 1-2, and then filed its Motion to Sever, To Transfer Venue, Or, In the Alternative, To Dismiss in order to consolidate AzTE's claims against SeaGen in the Western District of Washington where they can be adjudicated together with the claims in the Washington Lawsuit. Docket No. 17.

## III. <u>ARGUMENT</u>

### A. The Court Is Authorized to Consider SeaGen's Motion to Sever Together With Plaintiffs' Motion to Remand, In Order to Promote Judicial Economy and Avoid Prejudice

Plaintiffs assert that this Court lacks diversity jurisdiction since the Board is not a citizen of Arizona and, therefore, must remand the entire case back to the Arizona state

4

ROSHKA DEWULF & PATTEN, PLC
ONE ARIZONA CENTER
400 EAST VAN BUREN - SUITE 800
PHOENIX, ARIZONA 85004
TELEPHONE NO 602-256-6100
FACSIMILE 602-256-6800

court. Docket No. 15 at 3:20-4:20. In short, without saying so directly, Plaintiffs are asking the Court to decide the issue of remand without considering SeaGen's pending motion to sever AzTE's claims first and transfer them to the Western District of Washington. SeaGen's motion is particularly appropriate however, because the Board is not a party to the contract at issue and, therefore, is not a proper plaintiff in the first instance. A federal court may sever non-diverse, dispensable parties to retain diversity jurisdiction. *Slater v. Hoffman-La Roche Inc*., 771 F. Supp. 2d 524, 529 (E.D. Pa. 2011) (citing *Newman-Green*, 490 U.S. 826, 832–38 (1989)). As stated in the Federal Rules of Civil Procedure, Rule 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Rule 21 authorizes the district court to drop parties and sever claims to ensure a fair and just trial of each claim. *Gammons v. Real Prop. Inv. Servs., Inc.* No. CV-10-8081-PCT-LOA, 2010 WL 3156076, at *3 (D. Ariz. Aug. 9, 2010).

### 1. SeaGen and AzTE are the Parties to the Contract in Dispute

Plaintiffs disingenuously neglected to attach the contract at issue, the 2003 MTA, to their complaint. A copy of this three-page agreement is attached as Exhibit A to the Gilliland Declaration. The 2003 MTA was drafted and signed by the ASU Office of Technology Collaboration and Licensing. Plaintiff AzTE is its successor-in-interest. *See* Gilliland Decl., Ex. A. The 2003 MTA states that various forms of two compounds, Dil and Dap, are being provided to SeaGen, together with "any related information and know-how…." Gilliland Decl., Ex. A. That "Material" is to be used for "investigational use only in laboratory animals or other in-vitro experiments." *Id.* (emphasis original).

AzTE apparently contends that SeaGen breached the 2003 MTA, although the Arizona Action makes no reference whatsoever to any non-investigational use of Dil or Dap. Regardless, for jurisdictional purposes the relevant fact is that AzTE is the proper party for asserting any such claim, since it is a party to the contract, and the Board is not.

Specifically, after the 2003 MTA was executed, AzTE was created by Arizona State University ("ASU") to succeed its Office of Technology Collaboration and Licensing to "serve as ASU's technology venturing enterprise." Gilliland Decl., Ex. E. AzTE, not the Board of Regents, is "the exclusive intellectual property management and technology transfer organization for Arizona State University." *Id.,* Ex. D. Because ASU desired that AzTE be "able to hold equity in exchange for licenses," *id.,* Ex. F, AzTE's Management Services Agreement expressly provides that AzTE, not the Board of Regents, has rights, title, and interest in any "Securities Rights or other property or rights or interest in property received by AzTE in licensing ASU Technology." *Id.,* Ex. C, § 1(a)(v).[1] Thus, AzTE is the only party with standing to recover any alleged damages from any alleged misuse of Dil and Dap in the 2003 MTA because the Board, having assigned its interests in property arising from technology licensing to AzTE, no longer has standing to recover under the rights that it assigned to AzTE. *See Merrill Lynch Bank USA v. Wolf*, No. CV 09-734-PHX-JAT, 2010 WL 4959950, at *4 (D. Ariz. Dec. 1, 2010) ("[A]ssignment of a claim transfers all rights and interests in the claim to the assignee, leaving the assignor with nothing."); *accord Quality Infusion Care, Inc. v. Health Care Serv. Corp.,* 628 F.3d 725, 729 (5th Cir. 2010) ("After an assignment, 'the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance.'") (quoting Restatement (Second) of Contracts § 317(1)); *Kroeplin Farms Gen. P'Ship v. Heartland Crop Ins., Inc.*, 430 F.3d 906, 911 (8th Cir. 2005) (same); *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875-76 (Fed. Cir. 1991) (holding patent licensor was not an essential party where the patent license demonstrated that only the patent licensee had exclusive rights to sue for infringement).

---

[1] Under the Management Services Agreement, AzTE was also supposed to "receiv[e] an assignment of and manag[e] pre-existing ASU license agreements of ASU Technology" such as the 2003 MTA. *See* Gilliland Decl., Ex. C, § 1(a)(iv).

Accordingly, the Board is not a proper party to this suit, and should be dismissed. *See Merrill Lynch Bank*, 2010 WL 4959950, at *7 ("Where a party has filed suit to vindicate contractual rights, but the evidence shows he has already assigned those rights to others, his claim fails for lack of standing.")

In sum, AzTE is the only proper plaintiff in this suit. The Board likely was included as a plaintiff in an improper effort to destroy diversity jurisdiction. This effort must fail, and the Board should be dismissed from this action, because it has no cognizable claim against SeaGen. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992) (finding improper joinder when plaintiff failed to state any claim against a diverse defendant); *accord Ballesteros v. Am. Standard Ins. Co. of Wisconsin*, 436 F. Supp. 2d 1070, 1072 (D. Ariz. 2006).[2]

### 2. This Court May Dismiss, or Sever And Remand, Any Claims Possessed by The Board

When faced with questions of subject matter jurisdiction and a motion to remand, a court may decide other pending motions first under appropriate circumstances. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007) ("[T]here is no mandatory sequencing of nonmerits issues... A court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'"); *Davidson v. Exxon Corp.,* 778 F. Supp. 909, 910 (E.D. La. 1991) ("For reasons of comity and judicial economy, this Court must refrain from ruling on plaintiff's Motion to Remand, except to determine that jurisdiction exists and that this matter shall be transferred to the more convenient forum for reasons hereinafter written."). A court may decide a motion to sever and dismiss parties even if parties are not improperly joined under Rule 20(a). *Gammons*, 2010 WL 3156076, at *3 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1297 (9th

---

[2] At a minimum, SeaGen seeks permission to undertake limited discovery related to the Board's alleged claim, and its relationship with AzTE, before the Court decides whether the Board is a proper party and, therefore, whether diversity jurisdiction exists.

7

Cir. 2000). This is because both Rule 20(a) and Rule 21 must be construed and administered in accordance with Rule 1's mandate "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Similar circumstances exist here, warranting consideration of SeaGen's Motion to Sever first. If the Court grants SeaGen's pending motion by severing AzTE's claims and transferring them to the Western District of Washington, that court, where the first action involving the disputes among the parties was filed, will have jurisdiction and be able to adjudicate all the parties' claims in one action.

### B. The Overall Circumstances Warrant Considering Both Pending Motions Concerning Jurisdiction and Venue Together

AzTE's claims against SeaGen in the Arizona Action arise out of the same common nucleus of operative facts as SeaGen's claims currently pending in the Washington Lawsuit. The central question of fact is: what use, if any, did SeaGen make of materials and/or information it allegedly obtained from the plaintiffs with respect to its development of MMAE and eventually ADCETRIS? SeaGen contends it has not infringed the '483 patent, not breached the '483 Patent License or 2003 MTA, and not misused any know-how. AzTE claims the opposite. These contentions should be adjudicated by a single court that also has jurisdiction to adjudicate the patent issues. The state court of Arizona *cannot* decide claims concerning patent infringement, since federal district courts have exclusive subject matter jurisdiction over such claims under 28 U.S.C. §§ 1331 and 1338. Thus, the patent claims between SeaGen and AzTE must proceed in a federal court.

Between the two federal courts involved, the Western District of Washington is a proper venue for this action under both subsections (b)(1) and (b)(2) of Section 1391 of Title 28 of the United States Code. Venue is proper in that District because that is where the sole defendant, SeaGen, resides. *See* 28 U.S.C. §1391(b)(1). Venue is also proper because the Western District of Washington is the district in which "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §1391(b)(2).

SeaGen's research, development, marketing, and commercialization of ADCETRIS and related technologies —which forms the predicate for AzTE's claims for relief in this action—occurred at SeaGen's principal place of business in the Western District of Washington. Schumacher Decl., ¶ 3. Accordingly, the Western District of Washington is a proper venue in which this action could have been brought. *See* 28 U.S.C. §1404(a).[3]

"There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Delta Air Lines, Inc. v. Ass'n of Flight Attendants, CWA*, 720 F. Supp. 2d 213, 219 (E.D.N.Y. 2010) (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968)). Therefore, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 342 F. Supp. 2d 124, 130 (E.D.N.Y. 2004).

Here, SeaGen was the first to file its Declaratory Judgment action in the Western District of Washington. The Amended Complaint in that action seeks resolution of a number of disputes between the parties, including alleged patent infringement, alleged breach of a license agreement, alleged breach of a materials transfer agreement and allegations of unjust enrichment. The issues being adjudicated in the earlier filed Washington Action include the same allegations set forth in AzTE's later filed action.

"[T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time,

---

[3] Plaintiffs cannot and do not dispute that: 1) AzTE is not an arm of the State of Arizona; 2) as an independent limited liability company that simply contracts with the State of Arizona, AzTE cannot assert sovereign immunity to suit in federal court; and 3) diversity of citizenship exists between AzTE, a citizen of Arizona, and SeaGen, a citizen of Washington.

energy, and money that Section 1404(a) was designed to prevent." *Western Digital Techs., Inc. v. Bd. of Regents of Univ. of Texas Sys.*, No. C 10–3595 SBA, 2011 WL 97785, at *4 (N.D. Cal. Jan. 12, 2011) (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990)). Further, "[t]he feasibility of consolidation is a significant factor in a transfer decision … because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *A.J. Indus., Inc. v. U.S. Dist. Court*, 503 F.2d 384, 389 (9th Cir. 1974).

Here, the interests of judicial economy and the avoidance of duplicative discovery and inconsistent results strongly weigh in favor of a transfer of AzTE's claims. Both cases will require adjudication of a central issue of whether SeaGen has improperly used "critical materials and information" and in the process either breached an agreement or was unjustly enriched. *Compare* Complaint, ¶¶ 9, 10, 20, 21, 23-27, 28-34 *with* Trock Decl., Ex. 6 at ¶¶ 21-23, 27, 35-36, 52-59, 60-67 & Prayer ¶¶ G, I. Given the overlap of issues, keeping these two actions separate and parallel inevitably will lead to duplicative discovery and pretrial motions and will require two courts to analyze the same factual and legal issues. Accordingly, failure to transfer AzTE's claims to the Western District of Washington would "squander judicial resources and needlessly require the parties and the courts to duplicate efforts." *Western Digital Techs.*, 2011 WL 97785, at *5.

A transfer is especially warranted here because AzTE's claims may be consolidated with the Washington Lawsuit and may be asserted as counterclaims therein. The causes of action in the Washington Lawsuit mirror the subject matter of the later filed AzTE claims. Without determining precisely if claims were compulsory counterclaims, other courts have transferred cases to districts with pending litigation in part because "[e]ven if the cases are not ultimately consolidated, having the matters resolved in the same forum will increase the probability of consistent results." *CompuCredit Holdings Corp. v. Akanthos Capital Mgmt., LLC*, No. 10–1213 (JRT/JJK), 2011 WL 124220, at *3 (D. Minn. Jan. 14, 2011). It defies judicial economy and the intent of Section 1404(a) to maintain AzTE's later-filed,

parallel action that at best would resolve only a fraction of the parties' disputes.

Given these circumstances, the Court should retain jurisdiction over AzTE and grant SeaGen's pending motion to sever, transfer or dismiss.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' motion to remand AzTE should be denied. SeaGen does not oppose the remand of the Board of Regents.

DATED this 24th day of December, 2012.

ROSHKA DeWULF & PATTEN, PLC

By  /s/   Jennifer A. Stevens
   John E. DeWulf
   Darlene M. Wauro
   Jennifer A. Stevens
   One Arizona Center
   400 East Van Buren Street, Suite 800
   Phoenix, Arizona  85004

Attorneys for Defendant Seattle Genetics, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2012 I electronically transmitted the above Defendant Seattle Genetics, Inc.'s Opposition to Plaintiffs' Motion to Remand to Arizona Superior Court for Maricopa County to the U.S. District Court Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants in this matter.

/s/ Jennifer A. Stevens